**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASHANDEEP SINGH,**<br>**Petitioner** | : | **No. 3:26cv1607** |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **JOHN E. RIFE, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security; TODD BLANCHE, Acting U.S. Attorney General; Executive Office for Immigration Review; and CRAIG LOWE, Warden of Pike County Correctional Facility,**<br>**Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Jashandeep Singh is a native and citizen of India in the custody of Immigration and Customs Enforcement at the Pike County Correctional Facility. (Doc. 1 ¶¶ 10, 17). Previously, the court granted Singh's petition for writ of habeas corpus under 28 U.S.C. § 2241 and ordered that he be provided with a bond hearing in accordance with certain conditions.[1] Singh v. Rife, 2026 WL

[1] With respect to the underlying petition for writ of habeas corpus, the government asserted that Singh was lawfully detained without bond under 8 U.S.C. § 1225(b)(2). 2026 WL

2187146, at *4 (M.D. Pa. July 29, 2026). Otherwise, according to the memorandum order, the petitioner would be released. Id. Following denial of bond by an immigration judge in the Department of Justice's Executive Office of Immigration Review, Singh filed a motion to enforce those conditions. (Doc. 9). His motion asserts that he experienced additional due process violations during his bond hearing because bodycam footage of his arrest could not be viewed by the IJ. Id. ¶ 21. After considering the parties' arguments and reviewing the record, Singh did not experience a deprivation of due process and the motion will be denied.

**Background**

This motion centers on the facts surrounding Singh's arrest by ICE pursuant to a warrant. In the prior memorandum order, the court highlighted a DHS record indicating that Singh refused to respond to the commands of ICE officers, which resulted in officers smashing the windows of petitioner's vehicle to

---

2187146, at *2. The court determined that § 1226(a) applied to Singh's detention and that the failure to provide him with a bond hearing violated his right to due process. Id. at *2–4.

As a result, a conditional habeas order was issued. Id. at *4–5. Specifically, Singh was to be provided with a prompt, individualized bond hearing before a neutral and impartial IJ with the burden on the government to demonstrate by clear and convincing evidence that Singh was a danger or a flight risk. Id. at *4.

take him into custody. 2026 WL 2187146, at *1–2. That record indicated that Singh's arrest was captured by officer bodycam. Id. at *2.

With respect to the conditional habeas order issued, the memorandum order stated as follows:

> Petitioner is entitled to a fair hearing. According [to] the records supplied by the respondents, ICE officers detailed the level of force required to arrest the petitioner. Given the descriptions provided by the ICE officers, the circumstances of petitioner's arrest are likely to play a role in whether he is afforded bond. There is bodycam video of the arrest, which is not relevant to the constitutional or statutory issues before the court, but is relevant to any determination of whether the petitioner is a danger or flight risk. Thus, to ensure a fair hearing from this conditional habeas order, the government will be ordered to turn over the bodycam video to counsel for the petitioner at least 24 hours in advance of the bond hearing. The bond hearing shall occur within 14 days. If the hearing is not conducted in 14 days or in accordance with the above conditions, Singh will be ordered released.

Id. at *4.

On August 10, 2026, IJ Corey Combs conducted a bond hearing in accordance with the timeframe required by the court's order. (Doc. 10-3). He denied bond. Id. IJ Combs's order stated:

> The Court has held an individualized bond hearing with the burden on the government of proving by clear and convincing evidence that the respondent's continued detention is necessary, as directed by order of the District Court. The government has met their burden to establish that the respondent's continued detention is necessary to prevent him from fleeing.

Id.

Singh subsequently filed this motion on August 13, 2026, raising several different arguments as to why he received an unfair bond hearing. (Doc. 9). With the motion, Singh challenges the IJ's reasoning and assails the way evidence was weighed in the flight risk determination. Id. ¶¶ 9–20. Singh also asserts that his due process rights were violated because the IJ did not or was unable to view the bodycam video referenced by the court in its memorandum order. Id. ¶ 21. Finally, petitioner asserts that IJs are systematically denying bond requests due to flight risk, but such determinations have no basis in law. Id. ¶ 29. Singh also renews his request for release from immigration detention. Id. ¶ 32. Singh did not file a brief in support.

The government opposes the motion. (Doc. 12). Singh did not reply to the government's opposition arguments. Nonetheless, the court will waive the requirements of the Rules of Court for the Middle District of Pennsylvania and decide the motion on its merits with reference to the exhibits attached.

**Jurisdiction**

In opposition, the government challenges the court's jurisdiction over Singh's motion. Id. at 5. By law, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). But despite this

jurisdiction-stripping language, § 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). Additionally, the Third Circuit has never used § 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received.") (emphasis removed); Sylvain v. Att'y Gen., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[Section 1226(e)] does not limit habeas jurisdiction over constitutional claims or questions of law.") (alteration in original)). Further, in non-precedential opinions, the Third Circuit has recognized such jurisdiction. Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair.") (citations omitted); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

Additionally, with respect to jurisdiction over this specific motion to enforce, courts also have the inherent power to enforce their own orders, E.O.H.C. v. Sec'y DHS, 950 F.3d 177, 194 (3d Cir. 2020), and continuing jurisdiction to address alleged noncompliance with conditional writs of habeas corpus. Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citing Phifer v. Warden, 53 F.3d 859, 865 (7th Cir. 1995)) (further citation omitted). The court previously issued a conditional writ of habeas corpus. Conditional writs are meant to accommodate governments. That is, a court may hold that some infirmity justifies relief but may also provide the government with a time window to cure the error. See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citations omitted).

The court's prior memorandum order directed the respondents to provide Singh with an individualized bond hearing within 14 days in accordance with certain terms. The court also ordered petitioner released if he did not receive a bond hearing within the 14-day period. As an example of why this court maintains jurisdiction over the motion to enforce, assume that the respondents did not comply with the time conditions in that order. There would be no reasonable jurisdictional dispute if the court then, upon notice, entered a subsequent order releasing the petitioner if he was not provided with a bond hearing within that period.

Here, Singh alleges that he did not receive a fundamentally fair bond hearing as contemplated by the terms of the court's prior memorandum order. (Doc. 9 ¶ 21). The court sees no reason why it would lack jurisdiction to consider whether these terms were satisfied by the government or whether Singh's due process rights were violated at the hearing. Respondents' jurisdiction arguments are thus rejected.

**Analysis**

## I. Administrative Exhaustion Limits the Considerations Here

The government further argues that Singh failed to exhaust his administrative remedies. (Doc. 12 at 7). Administrative exhaustion is prudential in this case, i.e., judge-made and discretionary. Under the case law, prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). "But even when courts might otherwise require exhaustion, they may excuse it when, for instance, 'waiver, estoppel, tolling or futility' applies." Id. (quoting Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)).

One of Singh's arguments advances that the IJ misapplied bond-consideration factors from Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)

during his bond hearing. (Doc. 9 at 3–4, 6). Singh, however, did not appeal the IJ's determination to the BIA, the administrative body that issued that decision. The government's exhaustion argument is thus well-taken. The court will not decide whether the IJ properly weighed evidence against factors in a BIA decision where the petitioner has elected not to appeal that determination to the administrative body that issued that decision. Rather, disposition of this motion to enforce focuses solely on whether Singh received a fundamentally fair hearing that comports with the requirements of due process.

## II. Singh Has Not Demonstrated a Due Process Violation

Getting to the heart of this matter, Singh asserts that he was unable to submit bodycam footage of his arrest to the IJ for review. (Doc. 9 ¶ 20 ("IJ Combs noted the EOIR policy that he "cannot take actual video into the record" when he asked undersigned counsel in what form Petitioner was offering the ICE body camera footage."); see also Doc. 11, Pet. Ex. H, August 5, 2026 Hearing Audio). He contends that "inability to submit the ICE body camera footage in full violated his due process rights as he was not able to adequately present the evidence that this Court found would be relevant to any determination of whether the petitioner is a danger or flight risk." (Doc. 9 ¶ 21) (citation modified).

The court previously determined that bodycam footage from Singh's arrest was relevant to a bond determination. 2026 WL 2187146, at *4. Although the

prior decision did not explicitly state that the IJ was required to view the bodycam video, the court presumed that EOIR could accept the video into the record as evidence. Thus, the court must consider whether the IJ's inability to view the bodycam video violated Singh's procedural due process rights.

In the prior decision, after weighing the procedural due process factors from Mathews v. Eldridge, 424 U.S. 319 (1976), Singh established his right to a bond hearing, not release. 2026 WL 2187146 at *3 & n.7. Under the facts now presented, Singh has not demonstrated a procedural due process violation regarding the completeness of the record before IJ Combs.

With respect to whether Singh has experienced another violation of his right to procedural due process, the court balances factors set forth in Eldridge. 424 U.S. at 335. Those factors are: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Id.

First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (plurality opinion).

Second, as to the risk of erroneous deprivation, the inability for an IJ to view bodycam footage from an ICE arrest across the EOIR system poses a discernable risk in bond proceedings or custody redetermination hearings. For his part, however, Singh offered IJ Combs a substitute for the bodycam footage, including a sequence of still-frame screenshots and transcription of audio. (Doc. 9-2, ECF pp. 77–94). The IJ appears to have relied on that evidence when providing his findings, which follow, in relevant part:

> The court does have concerns about this interaction from the 213 and this body camera footage. Although it was not a long amount of time, uh, between when the officers arrived and when they detained the Respondent, it does still cause concern for the court that the Respondent refused to comply with the officers and that ultimately in order to, uh, detain him and force his compliance, they did have to break multiple of his car windows to extract him from the vehicle.[2]

(Doc. 12-1 at ECF p. 7).

As to the probable value of additional procedural safeguards, such as allowing for a system that enables ICE bodycam videos to be reviewed by an IJ, the facts of this case demonstrate that the outcome here would not be any different if the IJ was able to watch the video as discussed further below.

Third, the government has not argued about its interests, including any fiscal or administrative burdens. The court will not speculate why EOIR

[2] Singh is the petitioner in this action and the respondent in immigration proceedings.

apparently maintains a policy of not accepting video evidence into the record for immigration proceedings.

Returning to consideration of the second factor, "due process is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Such flexibility "is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). For example, in the criminal context, an incomplete record for appellate review does not establish the right to automatic relief as a due process violation, even in a death penalty case. United States v. Savage, 970 F.3d 217, 237 (3d Cir. 2020) (citation omitted). Rather, due process only demands a record sufficiently complete to facilitate adequate review. Id. In Savage, the Third Circuit declined to read the Due Process Clause to require a verbatim transcript of the entire proceedings of a criminal case. Id. Upon review of Savage, the court will not declare an automatic violation of Singh's procedural due process rights based on the IJ's inability to view the bodycam footage. Petitioner's screenshots and audio transcription provided the IJ with a sufficient record.

## III. IJ Combs's Conclusions are Supported by the Bodycam Footage

In addition to finding no due process violation in this case, the bodycam footage shows exactly what IJ Combs referenced in his on-the-record disposition.

That is, ICE did have to break multiple car windows to extract Singh from his vehicle to effectuate a warrant issued for his arrest under 8 U.S.C. § 1226(a).

From the court's independent review, ICE officers pulled over a late model Dodge Charger along a commercial strip of road on May 30, 2025 at approximately 10:25AM. (Doc. 11, Pet. Ex. G., Axon_Body_4_Video_2026-05-30_1024_D01AJ262P, at 0:00–0:42). The driver rolled his window down approximately two to three inches. Id., 0:42–0:46. As the lead officer approached the vehicle, he requested the driver to roll the window down more. He stated: "Roll your window down for me. Roll your window down for me. Jashandeep, roll your window down for me. We're officers with immigration. We have a warrant for your arrest, ok?" Id. 0:46–0:53.

Singh reached toward his passenger seat for a cell phone. Simultaneously, the ICE officer tapped the driver's side window with his index finger and then with a closed fist. Id., 0:53–0:59. Singh responded to continued commands to roll down his window by doing something on his phone. Id., 0:59–1:03. The lead officer, on his fifth command regarding the window, said, "Roll your window down or I'm going to break your window, how's that?" and told another agent to move away from the front of Singh's vehicle. Id.

The officers did not immediately smash any car windows. Rather, as Singh continued to focus on his cell phone, the lead officer stated: "Jashandeep, I need

you to roll your window down. Sir, we're officers with immigration and we have a warrant for your arrest. I need you to roll your window down for me now. I do have a warrant. I need you to step out of the vehicle."[3] Id., 1:03–1:18.

The officer continued, "Roll your window down or step out of the vehicle or it's getting . . . broken." (Doc. 11, Pet. Ex. G., Axon_Body_4_Video_2026-05-30_1024_D01AJ262P, at 1:18–1:24). The ICE officer then displayed a window-breaker tool and stated: "See this right here, it's going to break your fucking window. Roll your window down or I'm going to break your fucking window." Id., 1:24–1:33. All the while, Singh continued to keep his attention tuned to his cell phone. Id.

The lead officer paused for a moment. He then stated: "All right. Last chance, sir. Roll your window down and step out of the vehicle or I will break your window." Id., 1:33–1:41. It appears that Singh then held up his cellphone to record the officers. Id.

The lead officer moved to the driver's side rear window and cracked the safety glass. Id., 1:41–1:57. Six pushes on the glass later, the window broke apart. Id., 1:57–2:00. However, the officer was unable to unlock the car by

[3] Singh asserts that he asked to see the warrant at some point during the exchange. (Doc. 9 ¶ 24). Based on the ICE officer's statements during this portion of the exchange, the court finds that the petitioner's assertion corresponds with this part of the bodycam video. In prior proceedings in this court, the government supplied a record of the arrest warrant dated May 26, 2026, or four days before Singh's arrest. (Doc. 6-3 at ECF p. 7).

reaching forward toward the driver's side door. Id., 2:00–2:04. During this time, Singh held his phone in a position consistent with recording the officers. Id.

Thereafter, the lead officer grabbed the partially open driver's side window with ungloved hands. Singh responded repeatedly: "Hold on!" or "OK!". Id., 2:04–2:08. The lead ICE officer commanded again, "Roll your window down, now!" Id. Singh, however, continued to fixate on his phone screen. Id. As Singh's thumbs hovered over the phone, the officer yanked the driver's side window until it broke in a direction away from the petitioner. Id., 2:08–2:14. Still holding his phone, Singh then unlatched his seatbelt and offered no resistance to an officer removing him from the vehicle. Id., 2:14–2:25. Singh was handcuffed, searched incident to the arrest, and placed in the back of an unmarked SUV. Id., 2:25–3:30.

Having independently reviewed the bodycam videos above, the screenshots and bodycam audio transcripts supplied to IJ Combs portray the petitioner in the most favorable light in terms of any lack of flight risk. The actual footage may be reasonably viewed to depict Singh as unmoved by the repeated directives of law enforcement to effectuate his arrest. And it would not be unreasonable for an IJ to determine that the petitioner was a flight risk based, in part, on video evidence of a barricade mentality.

In closing, there are "three pillars" of a fair hearing: "(1) the IJ engages in fact-finding based on the record made at a hearing and disclosed to the noncitizen; (2) the noncitizen has the opportunity to make arguments and present evidence on his/her own behalf; and (3) the IJ makes an individualized determination of the noncitizen's claims." B.C. v. Att'y Gen. U.S., 12 F.4th 306, 313 (3d Cir. 2021) (citing Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 386 (3d Cir. 2001)). After reviewing the record, all three pillars remain sound in this case, including the second presentation of argument and evidence pillar.

**Conclusion**

Accordingly, for the reasons set forth above, Petitioner Jashandeep Singh's motion to enforce will be denied. An appropriate order follows.

**Date:** 11/3/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**